UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-22671-ALTONAGA/TORRES

DELIO BATISTA,
CARLOS LOPEZ,
MARIANA LOPEZ, and
RAFAELA VALIENTE,

    Plaintiffs,

vs.

AVANT ASSURANCE INC.,
REINIER CORTES, AND
ANDREA GONZALEZ QUINTERO,

    Defendants.
_____/

## DEFENDANTS' RESPONSE TO PLAINTIFFS' FIRST REQUEST FOR INTERROGATORIES

Defendants, AVANT ASSURANCE INC., REINIER CORTES and ANDREA GONZALEZ QUINTERO, by and through their undersigned counsel hereby serve their Answers to Plaintiffs' First Set of Interrogatories.

*(Space intentionally left blank)*

## INTERROGATORIES

1. Who is answering these interrogatories on behalf of Avant Assurance? State the person's name, address, phone number, and relationship to Avant Assurance.

   **ANSWER:**

   Reinier Cortes / 3470 NW 82nd Ave, Suite 700, Doral, FL 33122 / 305-686-5561 / CEO

2. Name all persons who have information relevant to the claims and defenses in this case, and for each person, state the information you believe they have.

   **ANSWER:**

   A) Reinier Cortes: CEO at Avant Assurance Inc, was made aware of the contractual relationship formed with each Plaintiff. Plaintiffs requested to perform their services as independent contractors, and many of them requested to pay their companies.

   B) Andrea Gonzalez: Vice-President at Avant Assurance Inc, witnessed that Plaintiffs rendered their services as independent contractors and that Plaintiffs were free to work from home or at the office without any schedule restrictions.

   C) Alix Ledesma: Sr. Call Center Manager at Avant Assurance Inc. Alix was a former independent contractor offering her services as an insurance agent.

   D) Katrina Guerra: Call Center Manager at Avant Assurance Inc. Katrina was a former independent contractor offering her services as an insurance agent.

   E) Ana Monge: Insurance Producer at Avant Assurance Inc. Ana was a former independent contractor offering her services as an insurance agent.

   F) Jennifer Manjarres - Title: Executive Office Manager at Avant Assurance Inc.

3. Do you plan on calling any expert witnesses on your behalf? If so, state the expert's name, address, phone number and information that you are calling them to testify about.

   **ANSWER:**

   None at this time.

4. State the exact time period that each Plaintiff worked at/for Avant.

**ANSWER:**

A) Carlos Lopez: was an independent contractor from around December, 2021 to June 16th, 2022.

B) Mariana Lopez: was an independent contractor from around November, 2021 to July 11th, 2022.

C) Rafaela Valiente: was an independent contractor from around November, 2020 to June, 2022.

D) Delio Batista: was an independent contractor from around September, 2020 to June 20th, 2022.

5. Explain how each Plaintiff's employment ended at Avant. (If you intend to respond to this question by stating that Plaitiffs were not employed by Avant, then for purposes of these interrogatories, "employment" means the contractual agreement under which each Plaintiff worked for Avant regardless of Defendants' position on their independent contractor/employee status).

**ANSWER:**

A) Carlos Lopez: On June 16th, 2022, Carlos' independent contractor relationship agreement was terminated for threatening to assault an employee of Avant Assurance Inc.

B) Mariana Lopez: On July 11th, 2022, Mariana sent an email to terminate her independent contractor agreement with Avan Assurance Inc.

C) Rafaela Valiente: On June, 2022, Rafaela's independent contractor agreement was terminated.

D) Delio Batista: On June 20th, 2022, Delio's independent contractor relationship agreement was terminated for threatening to assault an employee of Avant Assurance Inc.

6. Why did Plaintiffs received invoices for payments from Blueink?

**ANSWER:**

Defendants are not aware of any invoices Plaintiffs received from Blueink.

7. Why was Christopher Vasquez's employment at Avant Assurance terminated?

   **ANSWER:**

   Christopher Vasquez was not an employee at Avant Assurance Inc.

8. Explain how insurance agents working for Avant, including Plaintiffs, received commissions from 2020 to 2022. Explain if there were any contractual limitations to receiving commissions that agents were informed and how those limitations were communicated to them.

   **ANSWER:**

   Commissions were paid via ACH, check or Zelle. Defendants provided agents with commission terms.

9. Explain how insurance agents working for Avant, including Plaintiffs, received bonuses from 2020 to 2022. Explain if there were any contractual limitations to receiving commissions that agents were informed and how those limitations were communicated to them.

   **ANSWER:**

   Bonuses were paid via ACH, check or Zelle. Defendants provided agents with bonus terms.

10. What schedule were insurance agents at Avant required to work during the open enrollment periods from 2020 to 2022?

    **ANSWER:**

    Avant Assurance did not require agents to perform any services for any specific schedule at any time. All agents were free to provide their services at their own time, setting their own hours.

11. What schedule were insurance agents at Avant required to work during the months of the year that were not open enrollment?

    **ANSWER:**

    Avant did not require agents to perform any services for any specific schedule at any time. All agents were free to provide their services at their own time, setting their own hours.

12. Did Avant pay any bonuses to any of the Plaintiffs? If so, when were the bonuses paid, what amounts were the bonuses for, and how many customers did each Plaintiff sign for Avant to receive the bonuses?

    **ANSWER:**

Avant already provided this information to Plaintiffs.

13. Did Avant pay any commissions to any of the Plaintiffs? If so, when were the commissions paid, what amounts were the commissions for, and how many customers did each Plaintiff sign for Avant to receive the commissions?

**ANSWER:**

Avant already provided this information to Plaintiffs.

14. Were all customers signed up for insurance by Plaintiffs processed under their individual national producer numbers (NPNs)? If not, explain why customers signed by any of the Plaintiffs were not processed under their individual NPNs.

**ANSWER:**

Plaintiffs' NPNs were not used. The customer list is the property of Avant, hence Avant's principal agent NPN was used.

15. Were Avant's customers required to sign "Client Consent Statements"? If so, which portion of the statement required signature by the customer?

**ANSWER:**

It was optional to use a client consent statement; hence customers were not required to sign.

16. Were insurance agents required to sign "Client Consent Statements" for each customer that they signed up for Avant? Was the selling agent the only agent that should have signed the "Agent Acknowledgment" portion at the bottom of the statement?

**ANSWER:**

Agents were not required to sign any client consent form. The agent acknowledgment was not to be signed by an agent, this field was left blank and intended to be used by Avant's principal agent of record only.

**AVANT ASSURANCE INC.**

BY: _____
As its Authorized Agent

PRINT NAME: REINIER CORTES

TITLE: CEO

STATE OF FLORIDA  :

: SS.

COUNTY OF MIAMI-DADE:

Before me, the undersigned authority personally appeared **Reinier Cortes** who, after being duly sworn, states under oath that s/he is authorized to execute the foregoing Answers to Interrogatories on behalf of AVANT ASSURANCE, INC., and that they are true and correct to the best of her/his knowledge and belief. SWORN TO AND SUBSCRIBED before me this 15th day of June, 2023, and who is personally known by me [✓] or who produced _____ as identification.

_____
Signature Notary Public – State of Florida

Print Name: Jennifer A. Manjarres

My Commission Expires: 10/03/2023

JENNIFER A. MANJARRES
Notary Public-State of Florida
Commission # GG 916653
My Commission Expires
October 03, 2023

9