UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-22671-ALTONAGA/TORRES

DELIO BATISTA,
CARLOS LOPEZ,
MARIANA LOPEZ, and
RAFAELA VALIENTE,

      Plaintiffs,

vs.

AVANT ASSURANCE INC.,
REINIER CORTES, AND
ANDREA GONZALEZ QUINTERO,

      Defendants.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE DEFENDANT'S
RENEWED RULE 59 MOTION FOR REMITTITUR, OR
<u>ALTERNATIVELY, NEW TRIAL</u>**

      Plaintiffs, Delio Batista, Carlos Lopez, Mariana Lopez and Rafaela Valiente, request that

the Court deny Defendant's Renewed Rule 59 Motion For Remittitur, or Alternatively, New Trial

[ECF No. 124], based on the following good cause:

## I.  INTRODUCTION

      Defendant's post-trial motion masquerades as one filed under Rule 59 for remittitur or new

trial but challenges the sufficiency of the evidence that supported the jury's damages award.

Defendant waived that challenge. Defendant did not move for a directed verdict predicated on the

sufficiency of the evidence before the jury rendered its verdict or the Court's entry of Final

Judgment for Plaintiffs. [ECF Nos. 104, 106, 123-004.].  It also failed to contemporaneously object

to or move to strike testimony on the issue of damages that it now claims was speculative.

1

If the Court were to consider Defendant's arguments, notwithstanding its waiver, then it should still deny the relief requested due to the existence of evidence supporting the jury's verdict. The Defendant cannot satisfy the heightened standard that requires it to show the *complete absence of evidence* supporting the jury's damages award. The jury not only had sufficient evidence to calculate the damages stemming from the Defendant's breach of contract, but it deliberated with that evidence and calculated damages for each Plaintiff. Thus, no legitimate basis exists to disturb the jury's verdict based on the great discretion afforded to jurors who consider testimonial and documentary evidence at trial, deliberate with the trial exhibits for hours, and then render a verdict thereon. The Defendant's motion should be denied.

## I.    PROCEDURAL AND FACTUAL HISTORY

1.      The Court presided over the jury trial of this case from July 10-14, 2023. [ECF No. 104.]

### *The Parties Stipulated To All Trial Exhibits*

2.      Upon commencing the trial, the parties stipulated that seventeen trial exhibits would be introduced into evidence, which Plaintiffs filed with the Court after trial at ECF Nos. 115-117.

### *The Sales Process*

3.      The record lacks any evidence that any of the Plaintiffs failed to complete their role in the sales process.

4.      Rather, the jury had to decide whether it believed the Defendant and its witnesses about what Plaintiffs were required to do to complete a "sale," whether Plaintiffs completed those requirements, if and when Defendant received payment for policies Plaintiffs sold, whether the Plaintiffs were entitled to the commission and bonus payments they claimed and the amounts.

2

5.      Ultimately, the jury believed the Plaintiffs and did not find Mr. Cortes, Mrs. Gonzalez Quintero, or the Defendant's other witnesses credible.

6.      When asked, Mariana Lopez testified that Mr. Cortes did not show her proof that any of the 320 people did not qualify for health insurance" and that she had to rely "only on his word." [ECF No. 123-2 at 136.]

7.      As a Defendant's witness, Katrina Guerra, testified, "It was fairly quick sales." [ECF No. 123-4 at 20.]

8.      She testified that Defendant offered "special bonuses" that should be paid out based on "how many members we enrolled." *Id.*, at 12.

9.      Like the Plaintiffs, Ms. Guerra explained that her agreement with the Defendant, like the Plaintiffs, to be paid commissions and bonuses was to perform the following functions:

Q. You want to know what the terms are?

A. Yeah, basically, um, we were gonna get paid X amount per member that we were able to enroll.

Q. Um-hmm.

A. If we reach a certain amount of members, there would be a bonus. And there was a space available between 9:00 and 9:00 during the enrollment for us to go ahead and try to produce.

*Id.*, at 15. Enrollment was the key. She then explained that Exhibit 8, as discussed below, was the "outline" for "the numbers we needed to hit in order to go ahead and obtain a bonus for each mem- -- for each carrier." *Id.*, at 15.

10.     The evidence at trial was that Defendant informed Plaintiffs when a sale was "flagged" because of the absence of a Client Consent Statement and that they would upload the signed consent forms in the Radiusbob software. [ECF No. 123-2 at 73-78.]

3

11.     The jury was free to find the Plaintiffs were credible in their testimony that they sought payment of commissions and bonuses for completed sales they earned but were not paid.

### *The Defense Testimony*

12.     During trial, Mr. Cortes testified that Delio Batista and Rafaela Valiente were to be paid $10 per member for each month that a member's insurance policy was in place for the November 2020 through 2021 open enrollment period. [ECF No. 123-1 at 87-89.]

13.     He then testified that the new pay structure was different and that for the November 2021 through 2022 open enrollment period, Plaintiffs were to receive "anywhere from 15 to 35 per member" but only for one month. *Id.* at 88-90.

14.     Besides the one-time monthly payment for each member signed up, Mr. Cortes explained that his company, the Defendant, also offered bonuses based on the number of people signed up for each insurance plan, as more fully described in Exhibit 8. *Id.*, at 89-91.

15.     The Defendant identified either Mr. Cortes or Mrs. Gonzalez Quintero as the producing agent for each insurance policy, such that the commission statements would identify either one for each insurance policy issued. *Id.* at 92-93.

16.     Mr. Cortes did not share the commission statements with Plaintiffs. *Id.* at 101.

17.     Although Mr. Cortes claimed to have performed an accounting to identify the agent responsible for selling each insurance policy and to have created an Excel spreadsheet reflecting this accounting, Defendant did not introduce this spreadsheet nor any document to reflect the accounting Mr. Cortes claimed to have performed into evidence. *Id.* at 93-94 and 104-05.

18.     Mr. Cortes speculated about why the Plaintiffs were not properly paid but introduced no evidence to explain the actual reason for any discrepancy between the sales generated by the Plaintiffs and what the Defendant paid them. *Id.* at 96-99.

4

19.     He conceded that the only way for Plaintiffs to determine which customers signed up and which did not would be to call each person. *Id.* at 98-99.

20.     Mr. Cortes acknowledged that although he had the records from the insurance companies that identified each client who had a policy in place and the amount paid by each insurance company for each person, those records were not in evidence. *Id.*, at 100-105.

21.     Mr. Cortes conceded that the jury did not have to believe that he "prepared these commission statements with 100 percent accuracy." *Id.* at 105.

22.     He agreed that the jury did not have to believe him at all:

Q. We don't have to believe you?

A. No.

*Id.*, at 106.

23.     Mariana Lopez was the only Plaintiff who received her $25,000 bonus. *Id.* at 109.

24.     Mr. Cortes agreed that Ms. Valiente prepared a spreadsheet reflecting that she sold "1,250 total policies and 1082 were Oscar." *Id.* at 115-16.

25.     Mr. Cortes then testified about his preparation of Exhibit 12, and that for the in the 2021-22 Open Enrollment Period, and according to his Excel spreadsheet that was reviewed as Exhibit 12, Delio Batista enrolled 507 members, Carlos Lopez enrolled 570 members, Mariana Lopez enrolled 688 members, and that Rafaela Valiente enrolled 857 members.  *Id.* at 117-20.

26.     Mr. Cortes testified about the discrepancy between the number of members each Plaintiff enrolled and how Defendant underpaid them and agreed that "there shouldn't be a discrepancy. *Id.* at 121-24.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884  FAX 305.230.4844
*www.fairlawattorney.com*

27.     The testimony at trial was that Mr. Cortes purchased a luxury car (Ferrari) in May 2022, but contended that Avant Assurance Inc. received the Oscar bonuses at the beginning of July 2022, right before Mr. Lopez, Mr. Batista, and Ms. Valiente were fired:

Q. So within two, three weeks of that bonus coming in, they're all fired except for Mariana?

A. Correct.

*Id.*, at 140-141. Thus, the jury heard that the Defendant received the Oscar bonus payment **before** firing three of the four Plaintiffs.

### *The Plaintiffs' Testimony Established Liability And Damages*

28.     Mariana Lopez testified about how she arrived at her claim that she was owed approximately $15,700 in commissions. [ECF No. 123-2 at 100-01.]

29.     She further testified that she emailed Mr. Cortes about money owed to her. [ECF No. 123-2 at 113-14, 117-18.]

30.     Mariana Lopez testified about her agreement for payment with the Defendant before the 2021-2022 Open Enrollment Period as $10 per member for each month. [ECF No. 123-2 at 124-26.]

31.     She also testified about money owed to her for the 2020-21 Open Enrollment Period. [ECF No. 123-2 at 135-48.]

32.     Rafaela Valiente testified that Mr. Cortes explained to her that she would receive $10 per member for each month enrolled prior to the 2021-22 Open Enrollment Period. [ECF No. 123-2 at 124.]

33.     She received $2,800 but was to be paid "over 6,000" for selling over 600 policies. *Id.*, at 135.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

34.     Although Mr. Cortes told Ms. Valiente that the difference was because clients had not enrolled, he did not provide her with any proof at the time. *Id.*, at 136.

35.     She explained how it would be absurd that she only sold 49 policies in November 2020 as an example of how Defendant's witnesses were not credible. *Id.*, at 139-40.

36.     Ms. Valiente complained in writing to Mr. Cortes that he did not properly pay her for the policies she sold in 2020-21. *Id.*, at 150 and 153-54; and Trial Exhibit 4.

37.     Ms. Valiente testified that Defendant underpaid her in 2021. [ECF No. 123-2 at 155.]

38.     She then explained how the Defendant underpaid her for the commissions and bonuses she earned in the 2021-22 Open Enrollment Period. *Id.*, at 159-62.

39.     Delio Batista testified about the money owed to him at trial. [ECF No. 123-3 at 40-52, 80-83.] As Mr. Batista testified, "no one from Avant came to me and told me, Hey, you didn't reach the 600 so you are not entitled to the 25,000." *Id.*, at 83.

40.     Carlos Lopez testified about the bonuses and commissions owed to him, including by discussing his reference to Exhibit 17 that he prepared and that it served as the basis for the commissions and bonuses owed to him. [ECF No. 123-3 at 115-118; and ECF No. 116-6.]

41.     The Defendant previously stipulated to the introduction of all trial exhibits and lodged no contemporaneous objections to the testimony at issue herein.

42.     It also did not request the Court to strike any of the testimony at issue herein as too speculative.

### *Defendants Raised No Pre-Verdict Motions*

43.     The Defendant did not request the Court to entertain any motion before submitting the case to the jury, including a motion for directed verdict to challenge the sufficiency of the

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

Plaintiffs' evidence. [ECF No. 123-4 at 62: "Motions from the Defense? No, Judge."]

### *The Jury Used The Raw Data In Evidence To Calculate The Damages Awarded*

44.     The Court provided the jurors with digital versions of all exhibits introduced into evidence on a USB Drive, which the jurors could access on a laptop provided by the Court for use during their deliberations. [ECF No. 123-4 at 125-27.]

45.     The Defendant did not object to the jury's access to the trial exhibits in electronic format nor to the Court providing the jury with a laptop (with no internet access) for use during deliberations.

46.     The Exhibits included the raw data on the payments to each Plaintiff, the calculations by Mr. Lopez, the policies sold, the policies for which Plaintiffs were paid, and the payments the Defendant received from the various insurers. [ECF Nos. 113-117.]

47.     After deliberating with the trial exhibits from 12:47 p.m. on July 13, 2023, until 2:20 p.m. on July 14, 2023, the jury rendered a verdict for breach of contract damages awarding $54,511.00 to Delio Batista, $38,957.00 to Carlos Lopez, $15,576.00 to Mariana Lopez, and $68,120 to Rafaela Valiente against Defendant Avant Assurance Inc. [ECF No. 104.]

### *The Defendant's Post-Trial Motions*

48.     On August 14, 2023, the Defendant filed and served its first Rule 59 Motion for New Trial. [ECF No. 113.] Therein, Defendant sought a new trial based on Fed. R. Civ. P.59(a)(1) by arguing that the jury's verdict was excessive.

49.     The Court denied the Defendant's motion without prejudice on August 15, 2023, due to the lack of an available trial transcript, noting that "In its Motion, Defendant contests the sufficiency of the evidence supporting the damages awarded and further seeks a remittitur on the basis that the damages are excessive."  [ECF No. 114.]

8

50. The Defendant filed its Renewed Motion for Remittur, Or Alternatively, New Trial, on September 21, 2023. [ECF No. 124.] In its Renewed Motion, Defendant raises an issue it failed to raise timely, namely the sufficiency of the evidence regarding the breach of contract and resultant damages.

## II.   STANDARD OF REVIEW

Defendant asks the Court to grant a remittitur or a new trial based on Fed. R. Civ. P. 59(a)(1). [ECF No. 124 at 3.] Under Rule 59, the Court can only disturb the jury's verdict if it is "so excessive as to shock the conscience of the court." *Christopher v. Florida*, 449 F.3d 1360, 1368 (11th Cir. 2006). A motion under Rule 59 is not the proper mechanism "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005). "The trial judge's discretion to set aside a jury verdict based on the great weight of the evidence is very narrow." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1559 (11th Cir. 1984).

The Court can grant remittitur only when the jury's verdict "exceeds the amount established by the evidence." *Collins v. Koch Foods, Inc.*, No. 20-13158, 2022 WL 1741775, at *4 (11th Cir. May 31, 2022). This requires the Court to consider the "*maximum possible recovery*" available while viewing the evidence in the light most favorable to the Plaintiffs. *Doe v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 624 F. Supp. 3d 1292, 1300-01 (S.D. Fla. 2022) (emphasis added). In doing so, the Court cannot "substitute its judgment for the jury's." *Id.* (quoting *Walker v. Grampa's Real Est. Inc.*, 2022 WL 2308101, at *1 (S.D. Fla. May 20, 2022)).

Because Plaintiffs brought their breach of contract claim under Florida law, the Court must analyze the verdict against the appropriate state law standards. "Those include whether: the amount awarded is indicative of prejudice, the trier of fact ignored evidence, the trier of fact took

9

improper elements of damage into account, and others." *Collazo v. Progressive Select Ins. Co.*, 2022 WL 4483436, at *3 (S.D. Fla. Sept. 27, 2022) (citing Fla. Stat. § 768.74).

The Court cannot remit the jury's verdict involving a claim brought pursuant to Florida law. Absent an agreement, the available relief is limited to a new trial:

> "Although federal courts have no general authority to reduce the amount of a jury's verdict, pursuant to Rule 59(a)(1) [of the Federal Rules of Civil Procedure], a court that finds a jury's verdict excessive may order a new trial unless the plaintiff agrees to remit a portion of the jury's award." *Luis Medina & Evatech, Inc. v. Wright*, No. 8:10-CV-2134-MSS-AEP, 2014 WL 12618175, at *4 (M.D. Fla. Dec. 4, 2014) (citing *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 (11th Cir. 1999)). Where, as here, a federal district court sits in diversity, the court looks to state substantive law to determine whether the verdict is excessive. *See Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1446 (11th Cir. 1991).

*Gray v. R.J. Reynolds Tobacco Co.*, 2017 WL 6559115, at *3 (M.D. Fla. Oct. 26, 2017). As the Court in *Gray* further explained:

> Importantly, **Florida's remittitur statute does not "alter the 'longstanding principles' governing a trial court's deference to a jury's assessment of damages."** *Luis Medina*, 2014 WL 12618175, at *5 (quoting *Aurbach v. Gallina*, 721 So. 2d 756, 758 (Fla. Dist. Ct. App. 1998)) (quoting *Poole v. Veterans Auto Sales & Leasing Co., Inc.*, 668 So. 2d 189, 191 (Fla. 1996)) (internal quotation marks omitted). Specifically, in Florida it is well-established that a jury's verdict "should not be disturbed unless it is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate." *Bould v. Touchette*, 349 So. 2d 1181, 1184-85 (Fla. 1977); *see also Deakle v. John E. Graham & Sons*, 756 F.2d 821, 827 (11th Cir. 1985) ("As must a trial court in considering a motion for remittitur, in an appeal from the denial of such a motion we must independently determine the maximum possible award that is reasonably supported by the evidence in the record."). "**For a verdict to be found to be against the manifest weight of the evidence, the evidence must be 'clear, obvious, and indisputable**.' " *Normius v. Eckerd Corp.*, 813 So. 2d 985, 988 (Fla. Dist. Ct. App. 2002) (quoting *Hawk v. Seaboard Sys. R.R.*, 547 So. 2d 669, 671 (Fla. Dist. Ct. App. 1989)). [*Emphasis added.*]

*Gray*, 2017 WL 6559115, at *3.

Rule 59(a) allows the Court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." A defendant must show that the

verdict "is against the clear weight of the evidence or will result in a miscarriage of justice." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984). The trial court does not abuse its discretion to deny a new trial motion unless a defendant meets the daunting standard of proving that "the verdict is against the great—not merely the greater—weight of the evidence." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001); *see also Am. Builders Ins. Co. v. S.-Owners Ins. Co.*, 71 F.4th 847, 859 (11th Cir. 2023); *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 948–49 (11th Cir. 2018).

## III. ARGUMENT

The Court should reject the Defendant's sufficiency-of-the-evidence challenge, which it has cloaked as a remittitur or new-trial argument. Defendant relies on several cases to support its contention that the jury's damage award was based on speculation and guesswork, but those cases are easily distinguishable because they do not involve breach of contract claims, previously waived arguments, or a jury's calculating damages based on the evidence. Plaintiffs presented sufficient evidence at trial to support their claim(s) that the Defendant breached its contract(s) and the basis for the jury's award of damages thereon. Plus, the jury was capable of (and actually performed) its own calculations of the damages owed to each of the Plaintiffs based on their collective recollection of the trial testimony, analysis of the trial exhibits they had available during deliberations, and ability to decide the issues of weight and credibility. Although Defendant disagrees with the verdict, its one-sided recitation of isolated excerpts does not reflect the entirety of the testimony adduced or provide a basis to require retrial.

**A.**     <u>**The Defendant's Failure To Contemporaneously Object Or Move To Strike Trial Testimony Precludes The Grant Of A New Trial Or Remittitur.**</u>

The foundation for Defendant's Motion is that Plaintiffs' testimony regarding the formation

of a contract and their damages was too speculative to result in an award, let alone in the amounts awarded by the jury, for which Defendant seeks a new trial or remittitur to zero. [ECF No. 124.] The insurmountable hurdle the Defendant cannot overcome is that **it never raised a contemporaneous objection** at trial **or moved to strike** any of the Plaintiffs' trial testimony regarding the commissions or bonuses they claimed to have earned for their sales of policies.

Not once in eighteen pages does the Defendant identify a single objection to any trial testimony as speculative nor identify any request for the Court to strike any testimony as speculative. It further waived the issue by not raising any *ore tenus* motions before the jury's deliberations. [ECF No. 123-4.] The Defendant's failure to (a) lodge a contemporaneous objection to any testimony it claims was speculative, (b) move to strike what it argues post-trial to be speculative testimony, or (c) move for a directed verdict precludes this Court from granting a new trial based on the great discretion afforded to jury verdicts. As the District Court for the Northern District of Georgia summarized in a parallel situation, the failure to contemporaneously object to supposedly "speculative" trial testimony requires a motion for new trial or post-trial relief be denied:

> The direct testimony from Plaintiff, about which Defendant now complains, was that Hart had altered or entered Plaintiff's time. Def.'s Mot. for New Trial at 19 (citing Tr. at 24, 27, 29, 30, 47, 57). **At no time during Plaintiff's testimony on these issues, did Defendant object, including an objection based on speculation. As a result, Defendant has waived any objection to this testimony and cannot rely on it to form the basis of a motion for a new trial.** *See Bareagan v. LCT Transp. Servs., Inc.*, No. 00-2040-CIV, 2002 WL 32248046, at *2 (S.D. Fla. Mar. 15, 2002), *aff'd sub nom. Barragan v. LCT Transp.*, 65 F. App'x 713 (11th Cir. 2003) (finding that the plaintiff had waived his right to object to testimony where he failed to object to the testimony at trial, failed to move to strike the testimony, and failed to request a curative instruction to be given to the jury); *see also Nettles v. Daphne Utilities*, No. 15-13822, 2017 WL 1960395, at *2 (11th Cir. May 11, 2017) (failure to object to evidentiary error "fatal" to the claim); *United States v. Green*, No. CR415-204, 2016 WL 3866567, at *3 (S.D. Ga. July 13, 2016) (evidentiary error was not properly preserved when there was no objection at trial regarding the evidence); *Jordan v.*

*City of Birmingham*, No. 2:13-CV-01633-AKK, 2015 WL 12806596, at *1 (N.D. Ala. May 5, 2015) (where the defendant had failed to object at trial, the defendants could not advance any arguments in a motion for new trial that they failed to raise at trial).

> *8 **"[O]ne of the fundamental purposes of the contemporaneous objection rule is to protect judicial resources, in particular by ensuring that the trial courts will have an opportunity to avoid errors that might otherwise necessitate time-consuming retrial.**"** *United States v. David*, 83 F.3d 638, 644-45 (4th Cir. 1996). **Another purpose of the contemporaneous objection rule is to prevent counsel from " 'sandbagging' the courts by withholding a valid objection from the trial court in order to obtain a new trial when the error is recognized on appeal."** *Id.* at 645.

> *United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007). "**By failing to interpose a timely objection during the direct examination of either witness, the defense provided the district judge with no timely opportunity to avoid serious error that might otherwise have necessitated a time-consuming retrial.**" *Id.*

*Carroll v. ATA Retail Services, Inc.*, 2017 WL 11113320, at *7–8 (N.D. Ga. July 25, 2017), *aff'd*, 747 Fed. Appx. 762 (11th Cir. 2018) [*Emphasis added.*] This Court should likewise conclude that Defendant waived the issues it now seeks to have the Court address.

Nowhere in its Motion does the Defendant explain how or why it neglected to preserve the purported error(s) at trial nor why this Court should second-guess the jury's decision and re-try the case following the Defendant's waiver. Based on the Defendant's failure to preserve any error at trial, and the resultant waiver, the Court should not proceed any further and instead deny the relief requested.

**B.      The Defendant Also Failed To Preserve Arguments For A New Trial Predicated On The Sufficiency Of The Evidence.**

Even if the Defendant's newly minted evidentiary objection had not been waived, a losing party may only move for a new trial under Rule 59 on the grounds that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair ... and may raise questions of law arising out of alleged substantial errors in admission or

13

rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). Thus, under Rule 59(a), a district court may, in its discretion, grant a new trial "if in [the court's] opinion, the verdict is against the clear weight of the evidence ... or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Hewitt v. B.F. Goodrich Co.,* 732 F.2d 1554, 1556 (11th Cir.1984) (second alteration in original) (*quoting U.S. v. Bucon Constr. Co.*, 430 F.2d 420, 423 (5th Cir.1970)) (internal quotation marks omitted).

The Defendant's motion, however, challenges the *sufficiency of the evidence* presented at trial, not the clear weight of that evidence. The law precludes a sufficiency argument at this late stage because the Defendant did not move for a directed verdict at trial.[1] Therefore, the Court's "inquiry is limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency." *Palmer v. Robbins*, 2023 WL 5786381, at *1 (11th Cir. Sept. 7, 2023) *quoting Hercaire Int'l, Inc. v. Arg.*, 821 F.2d 559, 562 (11th Cir. 1987) (internal quotations omitted)) [emphasis in original];*see also Buland v. NCL (Bahamas) Ltd*, 992 F.3d 1143, 1148–49 (11th Cir. 2021) *citing Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1437 (11th Cir. 1983) ("When a party moves for a new trial based

---

[1] Rule 50 is the mechanism for defendants to challenge the sufficiency of a plaintiff's evidence at and after the close of the case:

> (a) (1) If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

> (A) resolve the issue against the party; and

> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed.R.Civ.P. 50(a)(1).

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

on the sufficiency of the evidence but does not move for a directed verdict on that basis, our review is limited to 'inquiring into whether *any* evidence supported submission of the issue' to the jury.") (emphasis in original) (alterations adopted); *see also Goldwire v. City of Riviera Beach, Fla.*, 2023 WL 197199, at *4 (11th Cir. Jan. 17, 2023) ("Our review is limited to whether there's any evidence to support the jury's verdict or whether there was plain error" and recognizing that, "In civil cases, generally, we do not notice plain error unless it involves a pure question of law."); and *Romero v. Razzle Dazzle Barbershop, Inc.*, 793 F. App'x 853, 856 (11th Cir. 2019). Put another way, the Court's inquiry is limited to whether there was an "absolute absence of evidence to support the verdict." *Hercaire Intern., Inc. v. Argentina*, 821 F.2d 559, 562 (11th Cir. 1987) (affirming District Court's denial of motion for new trial because "the verdict-loser failed to test the sufficiency of the evidence in the trial court by means of motions for directed verdict and judgment n.o.v.")

It is not surprising that the Defendant does not address this standard, likely because the evidence supported the jury's verdict and because its Motion does not address a "pure question of law." As explained below, the trial evidence regarding the Plaintiffs' performance of their contractual duties, the Defendant's breach, and the resultant damages were not speculative. The evidence in the record supported the jury's verdict and requires Defendant's motion be denied.

**C.**     **Florida Law Does Not Require Mathematical Precision For Breach of Contract Damage Awards.**

The Defendant's reliance on inapposite cases to argue for the Court to substitute its judgment for the jury's verdict is futile. The jury awarded breach of contract damages to Plaintiffs under Florida law based on the testimonial and documentary evidence introduced at trial and their computations thereon.

[I]n Florida, Plaintiff's burden of proof for breach of contract damages requires "the presentation of evidence sufficient to satisfy the mind of a prudent, impartial person as to

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

> the amount of awardable damages. That is, there must be a reasonable basis in the evidence for the amount awarded." *Sea World of Fla., Inc. v. Ace Am. Ins. Cos.*, 28 So. 3d 158, 160 (Fla. 5th DCA 2010) (quotation omitted); *see also Smith v. Austin Dev. Co.*, 538 So. 2d 128, 129 (Fla. 2d DCA 1989) (indicating that "uncertainty as to the amount of damages, or difficulty in proving the exact amount, will not preclude recovery" as long as there is "some reasonable basis in the evidence to support the amount awarded"). Defendants have not established that there is no reasonable basis for a jury to determine an amount of restitution damages here.

*Venerus v. Avis Budget Car Rental, LLC*, 2021 WL 9595511, at *13 (M.D. Fla. July 28, 2021). The trial testimony and exhibits gave the jury a "reasonable basis" for its verdict.

For starters, it is settled law that the "burden of establishing the amount of damages is less severe than … proving the fact of damage." *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 23-24 (5th Cir. 1974). Here, each Plaintiff explained to the jury the methodology used to determine the commission and bonuses they claimed as damages. [Testimony of Mariana Lopez, DE 123-2 at 79, 93-101, 117-119; Testimony of Rafaela Valiente DE 123-2 at 124, 135-147, 150-162-169; Testimony of Delio Batista, DE 123-3 at 36-52, 79-93, 101-103; and Testimony of Carlos Lopez DE 123-3 at 112-127]. This testimonial evidence stood unrefuted at trial. Although Defendant faults (only) Ms. Lopez for failing to be precise in her inability to explain the discrepancy, the trial testimony was that Ms. Lopez identified how she calculated the amounts owed to her, while Defendant neglected to provide any documentary or other evidence to refute her contention that it underpaid her.

Mr. Cortes testified that he kept a spreadsheet of all commissions, but Defendant never produced this document in discovery, did not identify it as a trial exhibit, and never attempted to introduce it into evidence. Furthermore, Mr. Cortes testified that the Defendant's records would reflect that all the sales were credited to him (or his wife) because his license was the one that was used for the sale and that he did not share those records with anyone. Defendant's shoddy and

imprecise recordkeeping practices do not warrant a reexamination of the evidence or a new trial. *See Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927) ("[A] defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible."); *Lehrman v. Gulf Oil Corp.*, 464 F.2d 26, 45 (5th Cir. 1972) ("The wrongdoer must bear the risk of the uncertainty in measuring the harm he causes.").

Mr. Cortes also testified regarding how each person should or could calculate their commissions and bonuses. [DE 123-1 at 89-96].

Q. Well, do you agree that you were paying my clients for less policies than they believed they should be paid for?

A. It could have been a certain time because we did not get paid from the insurance company, and that was requirement No. 1.

[DE 123-1 at 96.] It was within the jury's province to find that Mr. Cortes was not credible on this issue, especially considering how many times he was impeached at trial and his admission to receipt of the Oscar bonus before firing three of the four Plaintiffs. Mr. Cortes's trial testimony also negates the arguments raised in the instant Motion, specifically that the Plaintiffs were guessing that they were underpaid and about the amounts they were owed. Defendant presented no evidence to refute the methodologies used or the amounts calculated by the Plaintiffs other than to say that one way for them to verify the amounts would be to call every individual to whom they sold a policy, which could number in the hundreds, instead of examining the spreadsheets that Mr. Cortes compiled but did not offer into evidence at trial. [DE 123-1, page 99]. After weighing the evidence that included the testifying witnesses and the evidence presented, the jury properly awarded the Plaintiffs the bonuses and commissions that were due to them.

To recover breach of contract damages under Florida law, "damages are not rendered

17

uncertain so as to prevent their recovery because they cannot be calculated with absolute exactness. It is enough that the results be only approximate." *Jerrico, Inc. v. Washington Nat. Ins. Co.*, 400 So. 2d 1316, 1318 (Fla. 5th DCA 1981) (cited with approval in *Premier ATMS, Inc. v. Daisy Fresh, Inc.*, 23 So. 3d 1282, 1283 (Fla. 4th DCA 2010) (denying motion for new trial and determining plaintiff "established with reasonable certainty each element of its loss and presented damage proof based on established data, rather than on speculation or conjecture."); *see also United States v. Killough*, 848 F.2d 1523, 1531 (11th Cir. 1988) ("damages need not be calculated by mathematical precision").

The Plaintiffs presented evidence at trial regarding their breach-of-contract damages and how they should be calculated. Without the benefit of the jury's calculations, the Court should not disturb its verdict. *See Flooring Depot FTL, Inc., v. Wurtzebach*, 2021 WL 5348903 (Fla. 4th DCA Nov. 17, 2021) ("When mathematical errors are apparent on the face of a final judgment, an appellate court may order they be corrected on remand."). The competent, substantial evidence at trial supported the jury's verdict and requires the Defendant's motion be denied. *See e.g.*, *Sch. Bd. of Broward Cnty. v. Pierce Goodwin Alexander & Linville*, 137 So. 3d 1059, 1073 (Fla. 4th DCA 2014) (denying motion for remittitur based on "competent, substantial evidence.") The jury was free to rely on the trial exhibits and testimony to calculate and award the damages it deemed were appropriate.

The trial testimony was that Defendant agreed to pay $10 per month for each member enrolled prior to the 2021-22 Open Enrollment Period, other than when Ms. Lopez received her salary. Thereafter, the evidence at trial was that the Defendant agreed to pay the commissions and bonuses identified on trial Exhibit 8. [ECF No. 116-2.] The jury analyzed the trial testimony from each Plaintiff identifying the extent of underpayment of commissions, the number of completed Oscar sales, and the bonuses earned, considered the same along with the documentary evidence

18

available in the Exhibits, and properly calculated the damages awarded to each Plaintiff.

There is no better way to demonstrate that the jury performed their own calculations after deliberating than to compare the amounts requested for breach of contract damages (commissions and bonuses) in closing arguments with the amounts awarded by the jury for each Plaintiff:

| Plaintiff | Amount In Closing | Verdict Amount |
|---|---|---|
| Delio Batista | $57,096.20 | $54,511 |
| Carlos Lopez | $40,000 | $38,957 |
| Mariana Lopez | $15,700 | $15,576 |
| Rafaela Valiente | $73,000 | $68,120 |

[*Compare* ECF Nos. 123-4 at 99-101 with 104.] The precise damages the jury calculated and awarded to each Plaintiff militates against a finding that they had inadequate evidence or that their verdict was too speculative. The jury awarded Plaintiffs less than what they sought for breach of contract damages. Furthermore, the exact amounts awarded by the jury confirm that competent substantial evidence in the record existed for the jury to calculate its award.

Defendant argues that this case is "like *Instant One Media,*" but it is not. In *Instant One Media, Inc. v. Exfauxdecor, LLC*, 2023 WL 2422196 (11th Cir. 2023), the jury found the defendant liable for the trademark claim. The Eleventh Circuit determined that the plaintiff "failed to present sufficient evidence to satisfy **Georgia's** state-law standard" for "lost profits for a breach of contract." *Id.*, at *2. The breach of contract claim *sub judice* is governed by Florida state law and does not involve lost profits, but commissions and bonuses, making *Instant One Media* inapposite and Defendant's reliance misplaced.

Defendant also relies on *CE N. Am., LLC vs. Certain Underwiters at Lloyds', London Subscribing to*

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

*Policy No. B0799MC0366207*, 2023 WL 2714024 (S.D. Fla. Mar. 30, 2023), despite it being decided at summary judgment due to the plaintiff's failure to overcome objections to the admissibility of the spreadsheet that formed the basis for its damages.

For unknown reasons, Defendant also relies on *Saewitz v. Saewitz*, 79 So. 3d 831, 833 (Fla. 3d DCA 2012), an inheritance dispute case in which the trial court granted the defendant's motion for a directed verdict. The Defendant in the case *sub judice* did not object or move for directed verdict, and this case does not involve an inheritance dispute, making *Saewitz* distinguishable. And unlike the Plaintiffs' evidence—which was limited to commissions and bonuses that were owed from sales made during a particular time period—the testimony in *Saewitz* was deemed insufficient to establish damages because it was not "tied to a legally relevant time period." *Id.* at 833. The testimony presented at trial, including that summarized in Section II, related to when the Plaintiffs worked for Defendant, when they earned the commissions and bonuses from the Defendant, the fulfillment of their duties to receive the commissions and bonuses, and Defendant's receipt of any perquisite payments.

D.      **The Court Should Also Deny Defendant's Request for A Remittitur Because Of The Sufficiency Of The Record Evidence Supporting The Jury's Verdict.**

Having failed to show that the jury's assessment of damages lacked a reasonable basis in the trial evidence, the Defendant's last-ditch effort to avoid judgment is a claim that the verdict is so excessive as to shock the conscience. [ECF No. 124 at 16-17.] It is not. The Defendant's remittitur argument merely repackages its sufficiency-of-the-evidence challenge, which should be rejected for all the reasons explained above.

First, the jury's verdict was for less than the amounts each Plaintiff sought for breach of contract damages. [*Compare* ECF Nos. 123-4 at 99-101 with 104.]

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

Plus, the jury's verdict was reasonable and comported with the evidence of damages caused by the Defendant's breach of contract for failing to pay the Plaintiffs their owed commissions and bonuses. The Defendants do not--and cannot--point to any other statutory basis for remittitur under Florida law. The verdict as awarded by the jury should stand.

### IV. CONCLUSION

The Defendant asks the Court to bail it out from an adverse jury verdict after failing to raise an objection to the Plaintiffs' damages evidence or move for directed verdict. The Court should decline the Defendant's invitation to re-try this case after the jury rendered an adverse verdict based on a reasonable analysis of the testimonial and documentary evidence introduced at trial. The jury's award to each Plaintiff is not so egregious as to shock the conscience of the Court, is based on evidence in the record, and should not be disturbed.

Dated this 4th day of October 2023,

Brian H. Pollock, Esq.
Brian H. Pollock, Esq.
Fla. Bar No. 174742
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884
*Counsel for Plaintiffs*
